IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | CRIMINAL NO.  3:22-cr-102 |
| Plaintiff, ) | |
| ) | DEFENDANT'S SENTENCING |
| vs. ) | MEMORANDUM |
| ) | |
| BENJI CLARK ENGESSER, JR., ) | |
| ) | |
| Defendant. ) | |

**TABLE OF CONTENTS**

I.      INTRODUCTION.................................................................................................1

II.     PURSUANT TO THE FACTORS SET FORTH IN 18 U.S.C. § 3553(a), A SENTENCE BELOW THE ADVISORY GUIDELINE RANGE IS SUFFICIENT………..………………....…………………………………………….....2

   A.   Legal Authority………………………………………………………..…..2

   B.   Analysis……………………………………………………………………3

III.    CONCLUSION..................................................................................................8

## I.      INTRODUCTION

On October 17, 2023, Benji Clark Engesser, Jr. accepted responsibility for his conduct by pleading guilty to Count One of the two-count indictment, charging distribution and receipt of child pornography, in violation of 18 U.S.C. §§ 2252(a)(2) and (b)(1).   This matter is scheduled for a sentencing hearing on February 1, 2024, at 11:00 a.m.   The final presentence report provides a total offense level of 37, and a criminal history category of I, resulting in an advisory

1

sentencing guideline range of 210 to 240 months (the upper limited of the range controlled by the statutory maximum penalty). (PSR, ¶ 109). The statutory minimum term of imprisonment is five years. (PSR, ¶ 108). There are no remaining contested guideline issues to be resolved. However, Mr. Engesser is seeking a downward variance, asserting a sentence below the advisory guideline range would be sufficient, but not greater than necessary, to fulfill the purposes of sentencing. A variance is supported by his young age at the time of the offense, his lack of prior criminal history, and his personal history of trauma and related developmental delays and mental health challenges.

**II.     PURSUANT TO THE FACTORS SET FORTH IN 18 U.S.C. § 3553(a), A SENTENCE BELOW THE ADVISORY GUIDELINE RANGE IS SUFFICIENT.**

   A.   <u>Legal Authority</u>

It is well established that the court shall consider all factors set forth in 18 U.S.C. § 3553(a) to determine whether a sentence is sufficient, but not greater than necessary, to address the sentencing purposes outlined in paragraph 2 of this subsection. *See United States v. Haack*, 403 F.3d 997, 1003 (8th Cir. 2005). Paragraph 2 provides the following stated purposes:

> "The need for the sentencing imposed - A) to reflect the seriousness of the offense; to promote respect for the law, and to provide just punishment for the offense; B) to afford adequate deterrence to criminal conduct; C) to protect the public from further crimes of the defendant; and D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."

The sentencing factors to be considered by the court include the nature and circumstances of the offense, the history and characteristics of the defendant, and the kinds of sentences available. 18 U.S.C. § 3553(a)(1). In addition to these sentencing factors, the court is permitted to entertain policy considerations pertinent to the relevant guideline section. *Rita v. United*

*States*, 127 S. Ct. 2456, 24654 (2007).  The court may vary outside of the guideline range based on a policy disagreement with the underlying guideline section.  *Kimbrough v. United States*, 128 S. Ct. 558, 570 (2007).  The sentencing court "may not presume that the guidelines range is reasonable," but rather "must make an individualized assessment based on the facts presented to arrive at a sentence that is sufficient, but not greater than necessary."  *Gall v. United States*, 128 S. Ct. 586, 597 (2007).

    B.  <u>Analysis</u>

There are several mitigating factors important to Mr. Engesser's case, including his young age, lack of criminal history, his personal history of trauma, developmental delays and mental health issues.  The charged offense relates to conduct when Mr. Engesser was 21 years of age. (*See* PSR, ¶ 1) (noting offense range of March 12, 2022, to July 27, 2022).  His personal history suggests his chronological age overrepresents his developmental age and functioning.  Mr. Engesser has presented with developmental delays since he was a child and throughout his school age years.  (*See* PSR, ¶ 91).

The most significant obstacles Mr. Engesser has faced were based on circumstances outside of his personal control.  His mother abused alcohol and controlled substances throughout her pregnancy.  (PSR, ¶ 53).  In 2016, an evaluating psychiatrist at Vera French Mental Health Center diagnosed Mr. Engesser with Fetal Alcohol Syndrome (FAS) and suggested that diagnosis accounted for the significant developmental delays Mr. Engesser experienced.  (PSR, ¶ 76).  In addition to the FAS diagnosis, Mr. Engesser was diagnosed with ADHD (combined type), ODD and other specified neurodevelopmental disorder.  *Id*.  The borderline intellectual functioning was more recently confirmed in the BOP competency evaluation completed between September

8, 2022, and January 6, 2023. (PSR, ¶ 77). Mr. Engesser received special education services from kindergarten until he graduated high school. (PSR, ¶ 91). Many accommodations were made in his education plan to assist him with completing his education. *Id*. He was evaluated several times at the University of Iowa Stead Family Children's Hospital for neurocognitive delays, also receiving speech services for delayed articulation skills. (PSR, ¶ 92). He first received services at the University of Iowa at age eight, when he was seen for bowel and bladder management concerns, developmental delays, speech delays and behavioral problems. (PSR, ¶ 75).

In addition to cognitive disabilities, Mr. Engesser also presents with mental health diagnoses. The recent BOP evaluation diagnosed other specified depressive disorder. (PSR, ¶ 77). During the presentence report interview, he described a decline in his life after he turned 18. (PSR, ¶ 78). This coincides with the time in his life when he no longer had the structure and social outlet that was naturally available to him earlier in his life, through school. His report of a decline in the quality of his life is consistent with other indicators during that time. He describes suffering from severe depression as a result of a failed relationship in early adulthood. (PSR, ¶ 78). On August 5, 2022, his father sought treatment on his behalf, at Genesis Medical Center, based on his son's expressed suicidal ideation. (PSR, ¶ 80). In this evaluation, Mr. Engesser reported experiencing suicidal ideation over the course of last three years. *Id*. That time frame of the reported depressive symptoms correlates with the increased isolation, following the end of his school years—school serving as his primary social connection.

Mr. Engesser's cognitive disabilities have also had an isolating affect on his life, in that he does not easily find a social group within which he fits or has commonality. He describes being

bullied by peers for his learning disabilities during his adolescence. (PSR, ¶ 54). His father identifies his son's need for social connections, indicating his son has never had many friends. . (PSR, ¶ 55).

Unfortunately, Mr. Engesser has been forced to navigate many challenges in his life with inconsistent support. He was moved around between the care of various family members throughout his life. (*See* PSR, ¶¶ 68-70). His most consistent caregivers have been his paternal grandparents who are now 72 and 69 years old. (PSR, ¶¶ 58 and 59). Neither parent was able to provide reliable care for Mr. Engesser. However, Mr. Engesser presented special needs that warranted added attention and services. At times, there was not even a family member who could provide a clear description of issues or observations to Mr. Engesser's treatment providers.

Mr. Engesser's parents' instability negatively impacted his life. Mr. Engesser was removed from his mother's care following a report and confirmation of severe neglect. (PSR, ¶ 53). At the age of three, Mr. Engesser was found in conditions so unsanitary that he and his siblings were observed in the home playing with their own feces while their mother was under the influence of drugs and alcohol. (PSR, ¶ 53). He was removed from the home at this time and still has no relationship with his biological mother. (PSR, ¶ 57). Her parental rights were terminated with respect to all her children. (PSR, ¶ 57). He does not have a relationship with his maternal siblings, as they were adopted—one sister was adopted by his maternal grandparents and another sister adopted by an unrelated family. (PSR, ¶¶ 62, 63). Thus, Mr. Engesser does not have the typical sibling relationships with his sisters and no relationship with his mother.

With respect to Mr. Engesser's father, he has maintained a more meaningful role in Mr. Engesser's life. However, his father has served various periods of incarceration and has been

correspondingly unavailable as a parent. (PSR, ¶ 56). He did not start caring for Mr. Engesser until the age of 12. *Id*. That care was interrupted in 2015, when Mr. Engesser went to live with his grandparents. (PSR, ¶ 68). Mr. Engesser's father resumed care of him temporarily after his most recent release from prison. (PSR, ¶ 69). Mr. Engesser was living with his grandparents when taken into custody for the instant offense. (PSR, ¶ 70). Mr. Engesser has also been cared for temporarily by one of his half-brother's mother. (PSR, ¶ 53).

Mr. Engesser's age at the time of the offense supports a mitigated sentence. Young age and lack of maturity are mitigating factors, as they impact judgement and reasoning. "[D]evelopments in psychology and brain science continue to show fundamental differences between juvenile and adult minds"—for example, in "parts of the brain involved in behavior control." *Miller v. Alabama*, 567 U.S. 460, 471 (2012) (citing *Graham v. Florida*, 560 U.S. 48, 68 (2010)) (internal quotations omitted), *see also Roper v. Simmons*, 543 U.S. 551, 569-570 (2005). "Magnetic resonance imaging indicates that a particular section of a juvenile's frontal lobe, which controls decision making and other advanced functions, is not fully developed and continues to undergo significant change after an individual's eighteenth birthday. In fact, research shows that the human brain continues to develop and mature well into an individual's twenties."[1] Juveniles have "lessened culpability," because they have a "lack of maturity and underdeveloped sense of responsibility." *Graham*, 560 U.S. at 68 (citing *Roper*, 543 U.S. at 569-570). Based on the

---

3 *See* Andrea Wood, *Cruel and Unusual Punishment: Confining Juveniles with Adults after Graham and Miller*, 61 Emory L.J. 1445, 1450 (2012) (referencing scientific research related to issues of juvenile development considered in *Graham v. Florida*, 560 U.S. 48 (2010) and *Miller v. Alabama*, 567 U.S. 460 (2012)); *see also Roper v. Simmons*, 543 U.S. 551, 574 (2005) (indicating that the issues relating to the juvenile to not dissipate at age 18).

science of brain development, the brain continues to change well into an individual's twenties. In the instant case, cognitive functioning limitations suggest a reduced functioning age for Mr. Engesser, suggesting a more mitigating consideration based on maturity and reasoning.

Likewise, the incredible instability and trauma Mr. Engesser endured during his childhood and adolescence (and even prenatal care) offer additional mitigation. At age 21, Mr. Engesser was not yet self-sufficient or independent. He remained dependent on his family. The inability of juveniles to control their "horrific, crime-producing environments" is a recognized mitigating factor. See *Miller* at 471, citing *Roper* at 570. With respect to Mr. Engesser, the adverse experiences in his life were largely outside of his control from birth, and even before. His dependence on family for stability and services continued into his early adulthood.

His parents were never able to provide the stability or resources he needed. As a practical matter he was abandoned by both parents. Neither parent was able to provide adequate care. Even before birth, he suffered irreversible negative consequences for his mother's choices. He was born into an environment of severe neglect. Even when being cared for by others, his basic needs were not always met. He describes a lack of adequate food. (PSR, ¶ 53). Correspondingly, he describes the most stable living situation he had was when living with half-brother's mother. *Id*. He evaluated that home as the best because "he considered her a good mother since she kept food in the house for him to eat." *Id*. One of Mr. Engesser's stated goals is to live a stable life. (PSR, ¶ 55).

Mr. Engesser has no criminal history and has never served a previous term of incarceration. Therefore, any sentence imposed in this case will be significant to him. A prison sentence will have a more punitive effect on him than on someone who has been to prison before

and chosen to reoffend.   This consideration is relevant to the Court's determination of what type of sentence would constitute "just punishment."   *See United States v. Baker*, 445 F.3d 987, 992 (7th Cir. 2006).   Further, his cognitive challenges and lack of experience living independently, also make a prison sentence more impactful to him.

Following Mr. Engesser's sentence, there will be a mandatory period of supervised release.   His recommended conditions include:   testing and treatment for substance abuse, a mental health evaluation, sex offense-specific treatment, polygraph testing, a no contact with children provision, a no contact with the minor victim provision, a viewing restriction for sexually-explicit conduct, a limitation on internet access and related devices, a search condition, and sex offender registry compliance.   Thus, the supervision will result in close monitoring over a lengthy period of time, offering protection to the community and continued support for Mr. Engesser.   Likewise, Mr. Engesser will have an opportunity to receive more consistent services that will help him succeed in the community.   Mr. Engesser's lack of criminal history demonstrates his ability to be successful with supervision.

### III.   CONCLUSION

WHEREFORE, Mr. Engesser respectfully requests that the Court impose a sentence consistent with the arguments in this sentencing memorandum and below the applicable guideline range.

Respectfully Submitted,

FEDERAL DEFENDER'S OFFICE
CBI Bank & Trust Building
101 W. 2nd Street, Suite 401
Davenport, Iowa 52801-1815
TELEPHONE:  (563) 322-8931
TELEFAX:  (563) 383-0052
EMAIL:  diane_helphrey@fd.org

By:  /s/*Diane Helphrey*
　　　**Diane Helphrey**
　　　Assistant Federal Defender
　　　ATTORNEY FOR DEFENDANT

cc:  Melisa Zaehringer, AUSA

CERTIFICATE OF SERVICE
I hereby certify that on January 26, 2024, I electronically filed this document with the Clerk of Court using the ECF system which will serve it on the appropriate parties.
　　　　　/s/